UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOROTHY BIEBER**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**ADAPTHEALTH CORP.**,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1.      Plaintiff Dorothy Bieber brings this class action individually and on behalf of all others similarly situated against Defendant AdaptHealth Corp. ("Defendant" or "AdaptHealth") arising from Defendant's failure to properly secure and safeguard Plaintiff's and Class Members' personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") entrusted to Defendant in connection with its healthcare-related products and services. Plaintiff alleges the following upon information and belief and investigation of counsel, except for those allegations pertaining to Plaintiff, which are based on personal knowledge.

2.      Defendant AdaptHealth Corp. is a national provider of home medical equipment and related healthcare services, including respiratory and oxygen-related services. Defendant collects, stores, and maintains sensitive PII and PHI from patients and customers as part of its business operations.

3.      Plaintiff was a patient/customer whose information was maintained by Defendant. Plaintiff has received oxygen-support services through the entity that became part of AdaptHealth's operations and has remained a patient/customer since approximately 2021.

1

4.      On or about June 15, 2026, Defendant learned that a threat actor claimed to have obtained data from Defendant's systems. Defendant later disclosed that unauthorized access occurred within its cloud-based environment and involved sensitive data, including passwords associated with insurance billing, personally identifiable information, and protected health information of patients. The incident is hereafter referred to as the "Data Breach"

5.      Plaintiff did not receive a direct breach notice from Defendant and learned of the breach through other means. After the breach, Plaintiff experienced suspicious charges on her Cash App card, which she usually keeps inactive. She received notifications of several small purchases on Amazon Prime, despite not making those purchases. Plaintiff was forced to confirm that these purchases were not hers, cancel her Cash App card, and request and receive a new card.

6.      Plaintiff brings this action to address Defendant's failure to implement and maintain reasonable data-security practices, failure to protect Plaintiff's and Class Members' PII and PHI, and failure to provide timely and adequate notice of the Data Breach.

7.      As a result of Defendant's conduct, Plaintiff and Class Members have suffered injuries including loss of privacy, loss of control over their sensitive information, increased risk of identity theft and fraud, time spent responding to the Data Breach and monitoring accounts, and other damages.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which: (a) the number of Class Members is greater than 100; (b) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) there is minimal diversity, as at least one Class Member, including Plaintiff (a citizen of New York), is a citizen of a state different from Defendant

(a citizen of Pennsylvania).

9.      This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business and corporate headquarters in Pennsylvania, within this District. Defendant regularly conducts substantial business in this District, has sufficient minimum contacts with this State, and has purposefully availed itself of the laws and markets of this Commonwealth, rendering the exercise of jurisdiction by this Court both proper and just.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). Defendant resides in this District as its principal place of business is located here, and a substantial part of the events, acts, and omissions giving rise to Plaintiff's and the Class's claims occurred in this District, including Defendant's deficient data security practices and policies which were formulated, implemented, and managed from its headquarters within this District.

**PARTIES**

11.     Plaintiff Dorothy Bieber is a natural person and resident of Silver Creek, New York.

12.     Plaintiff has been a patient/customer for oxygen-related services since approximately 2021, when Olean General Health Care, her oxygen supplier, was purchased by or became part of AdaptHealth's operations.

13.     In connection with receiving services, Plaintiff provided or caused to be provided sensitive personal and health information to Defendant or its acquired/affiliated operations, including, but not limited to, information necessary for healthcare services, billing, and related administration.

14.      Defendant AdaptHealth Corp. is a Delaware corporation with its principal place of business in Conshohocken, Pennsylvania.

15.      Defendant provides home medical equipment and healthcare-related services to

3

patients throughout the United States, including respiratory and oxygen-related services.

16.    Defendant collected, stored, maintained, and controlled Plaintiff's and Class Members' PII and PHI.

17.    At all relevant times, Defendant had a duty to use reasonable measures to secure and safeguard Plaintiff's and Class Members' PII and PHI from unauthorized access, disclosure, and misuse.

18.    Defendant has yet to provide direct notice of the Data Breach to Plaintiff or Class Members.

19.    Plaintiff brings this action individually and on behalf of all persons whose PII and/or PHI was accessed, acquired, exfiltrated, compromised, or placed at risk as a result of the Data Breach.

**FACTUAL ALLEGATIONS**

**I.    Defendant's Business and its Duty to Safeguard Private Information**

20.    In the regular course of its business, and as a condition of receiving services, Defendant collects, stores, and benefits from vast quantities of highly sensitive Private Information of its clients and/or patients, including Plaintiff and the Class Members. This information includes, but is not limited to, Social Security numbers, financial account information, medical records, medical device information, and health insurance information.

21.    By obtaining, collecting, and storing this Private Information, Defendant assumed legal and equitable duties to Plaintiff and the Class to protect and safeguard that information from unauthorized access and disclosure.

22.    Plaintiff and the Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its

4

obligations to keep such information confidential and secure, as required by law and industry standards

## II. The Data Breach

23. Defendant disclosed a data-security incident to the United States Securities and Exchange Commission ("SEC") on or about July 2, 2026. AdaptHealth Corp. Form 8-K (hereafter referred to as the "SEC Filing")[1]

24. The SEC filing stated that, on or about June 15, 2026, Defendant received a communication from a threat actor claiming to have obtained sensitive data from Defendant's systems.

25. The SEC Report states that the threat actor gained unauthorized access to Defendant's cloud-based environment.

26. The unauthorized access involved sensitive information maintained by Defendant, including passwords associated with insurance billing, personally identifiable information, and protected health information of patients.

27. Thus, the criminals gained access through Defendant's cloud-based applications, including patient-management and document-storage platforms.

28. The SEC Filing states that Defendant determined by June 27, 2026 that the incident was material due to the nature of the incident and the potential volume of data placed at risk.

29. Per the SEC Filing, Defendant also determined that the incident resulted from a successful social-engineering attack that compromised a user session associated with a third-party contractor.

---

[1] https://www.sec.gov/Archives/edgar/data/1725255/000110465926080297/ahco-20260627x8k.htm (last accessed July 15, 2026).

30.     The Data Breach exposed or placed at risk the PII and PHI of Plaintiff and Class Members. Defendant acquired, collected, maintained, and stored that information in connection with its healthcare-related business, including the provision of home medical equipment, respiratory therapy, oxygen-related services, insurance billing, and related patient services.

31.     Plaintiff Dorothy Bieber was a patient/customer whose information was maintained by Defendant or its acquired/affiliated operations. Plaintiff has been with AdaptHealth for oxygen from 2021 to present, as Olean General Health Care, her oxygen supplier, was purchased by AdaptHealth in 2021.

32.     After the Data Breach, Plaintiff experienced suspicious activity on her Cash App card, which she usually keeps inactive. She received notifications of several small purchases on Amazon Prime, despite not making those purchases. Plaintiff was forced to confirm that these purchases were not hers, cancel her Cash App card, and request and receive a new card.

33.     Defendant failed to timely and adequately notify Plaintiff and Class Members of the Data Breach, depriving them of the opportunity to promptly protect themselves from identity theft, fraud, and misuse of their sensitive information.

34.     Defendant's failure to implement and maintain reasonable cybersecurity measures allowed unauthorized third parties to access, acquire, exfiltrate, and/or misuse Plaintiff's and Class Members' PII and PHI.

35.     As a direct and proximate result of Defendant's inadequate data-security practices and lack of direct notice, Plaintiff and Class Members suffered injuries including loss of privacy, loss of control over their sensitive information, increased risk of identity theft and fraud, time spent monitoring accounts and responding to suspicious activity, and other damages.

**IV.     Defendant's Failure to Maintain Reasonable Security**

36.     The Data Breach was a direct result of Defendant's failure to implement and maintain reasonable and appropriate data security procedures and practices, which are standard in the industry. The attack was not novel or sophisticated; it was foreseeable and preventable.

37.     At all relevant times, Defendant knew or should have known that its systems were a target for cybercriminals. The healthcare industry is notoriously targeted by hackers due to the high value of PII and PHI on the black market. The Federal Bureau of Investigation ("FBI"), Federal Trade Commission ("FTC"), and other government agencies have issued repeated warnings to the healthcare industry about the rising threat of cyberattacks.

38.     Defendant failed to heed these warnings and breached its duties by failing to implement adequate security measures consistent with industry standards. Upon information and belief, Defendant failed to comply with multiple established cybersecurity frameworks, including the NIST Cybersecurity Framework, the Center for Internet Security's Critical Security Controls ("CIS CSC"), and the requirements of the Health Insurance Portability and Accountability Act ("HIPAA") Security Rule, 45 C.F.R. Part 164, Subpart C.

39.     Upon information and belief, Defendant's specific security failures include, but are not limited to: (a) failing to encrypt sensitive Private Information; (b) failing to implement adequate firewalls, access controls, and network monitoring; (c) failing to ensure its software and systems were up to date and patched against known vulnerabilities; and (d) failing to provide adequate training to its employees on cybersecurity threats.

V.     **Criminals Target and Exploit Stolen Private Information**

40.     Defendant knew or should have known that the Private Information it collected and stored was a prime target for cybercriminals.

41.     It is widely known that PII and PHI are valuable commodities traded on the "dark

web," an encrypted part of the internet where criminals buy and sell stolen data.

42.     The healthcare sector has long been recognized as uniquely vulnerable to cyberattacks due to the immense value of the data it holds.

43.     As a 2025 Kroll report noted, the healthcare industry was the most breached in 2024, accounting for 23% of all breaches.[2]

44.     The Private Information compromised in the Data Breach is particularly valuable. The FBI has warned that criminals specifically target healthcare organizations for this information.

45.     Cybercriminals use stolen PII and PHI to commit a variety of crimes, including opening new financial accounts, filing fraudulent tax returns, obtaining medical services, and securing government benefits in the victims' names.

46.     Stolen health information also creates a unique risk of extortion. As cybersecurity experts have noted, criminals can leverage sensitive details about a person's medical conditions or illnesses to coerce or extort victims.

47.     Given the well-publicized history of data breaches in the healthcare sector and repeated warnings from the FBI and other authorities, the risk of an attack like the one that occurred was not only foreseeable but a near certainty for an entity like Defendant that failed to take adequate precautions.

48.     Defendant has also failed to give Plaintiff and Class Members the opportunity to protect themselves by failing to provide direct notice of the Data Breach.

**VI.     The Data Breach Caused Lasting Harm to Plaintiff and the Class**

49.     As a direct and proximate result of Defendant's failure to protect their Private Information, Plaintiff and the Class have suffered and will continue to suffer significant and

---

[2] Data Breach Outlook, KROLL, https://www.kroll.com/en/insights/publications/cyber/data-breach-outlook-2025 (last accessed July 13, 2026).

concrete harm. The injuries are not speculative; they are actual and ongoing.

50.     Plaintiff and Class Members now face a substantial and imminent risk of identity theft, financial fraud, and medical fraud that will persist for the rest of their lives. Unlike a compromised credit card, which can be canceled, a Social Security number, date of birth, medical devices, and medical history are permanent. Once this data is in the hands of criminals, the risk of misuse is perpetual.

51.     The ramifications of the Data Breach have forced Plaintiff and Class Members to spend, and continue to spend, significant time and money to mitigate these risks. These mitigation efforts include, but are not limited to: monitoring financial and medical statements for fraudulent activity; purchasing credit monitoring and identity theft protection services; placing and managing credit freezes and fraud alerts; spending time on the phone with financial institutions and government agencies to address fraudulent activity or secure accounts; and dealing with the influx of spam, phishing, and scam attempts that result from their information being available to criminals.

52.     Plaintiff and the Class have also suffered a compensable loss from the diminution in value of their Private Information. This information is a valuable asset, which they entrusted to Defendant in exchange for services, reasonably expecting it would be kept secure. By allowing this asset to be stolen, Defendant deprived Plaintiff and the Class of the value of their data.

53.     Finally, Plaintiff and the Class have suffered non-economic damages, including invasion of privacy, anxiety, stress, fear, and frustration resulting from the compromise of their most sensitive information and the ongoing threat of misuse.

## VII.     Defendant's Conduct Violated Legal and Industry Standards

54.     Defendant had duties under federal law, including HIPAA and Section 5 of the

9

Federal Trade Commission Act ("FTC Act"), as well as common law, to protect the Private Information it collected and stored. Defendant systematically violated these duties by, upon information and belief, failing to implement and maintain reasonable and appropriate data security measures, directly and proximately causing the Data Breach.

### 1. Defendant Violated HIPAA

55. As a national provider of healthcare services, Defendant acts as a "business associate" as defined by HIPAA, 45 C.F.R. § 160.103.

56. As such, Defendant is directly required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E, and the Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and C.

57. The HIPAA Security Rule requires Defendant to implement appropriate administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of all electronic protected health information ("ePHI") that it creates, receives, maintains, or transmits.

58. The Data Breach itself, resulting from a successful cyberattack, demonstrates Defendant's failure to comply with the safeguards mandated by HIPAA. Upon information and belief, Defendant's specific security failures include, but are not limited to, the following:

    a.    Failing to ensure the confidentiality, integrity, and availability of all ePHI that it creates, receives, maintains, and transmits, in violation of 45 C.F.R. § 164.306(a)(1);

    b.    Failing to protect against reasonably anticipated threats or hazards to the security or integrity of ePHI, in violation of 45 C.F.R. § 164.306(a)(2);

    c.    Failing to protect against reasonably anticipated uses or disclosures of ePHI that are not permitted, in violation of 45 C.F.R. § 164.306(a)(3);

    d.    Failing to conduct an accurate and thorough assessment of the potential risks and vulnerabilities to the confidentiality, integrity, and availability of ePHI held by

Defendant, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(A);

e. Failing to implement security measures sufficient to reduce risks and vulnerabilities to a reasonable and appropriate level, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(B);

f. Failing to implement technical policies and procedures for electronic information systems that maintain ePHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

g. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

h. Failing to implement procedures to identify and respond to suspected or known security incidents and mitigate their harmful effects, in violation of 45 C.F.R. § 164.308(a)(6); and

i. Failing to implement a security awareness and training program for all members of its workforce, in violation of 45 C.F.R. § 164.308(a)(5).

**2. Defendant Failed to Comply with FTC Guidelines**

59. Defendant was also prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45, from engaging in "unfair or deceptive acts or practices in or affecting commerce."

60. The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an unfair practice in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

61. The FTC has promulgated numerous guides for businesses, such as *Protecting Personal Information: A Guide for Business*,[3] which establish cybersecurity guidelines and highlight the importance of implementing reasonable data security practices. These guidelines make clear that businesses should protect the personal information they keep; encrypt sensitive

---

[3] https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed July 15, 2026).

data; understand their network's vulnerabilities; limit data retention; and monitor for suspicious activity.

62.     Defendant failed to follow these basic, well-established guidelines. Upon information and belief, Defendant failed to:

a.     Encrypt the sensitive Private Information it stored on its computer networks;

b.     Implement an intrusion detection system and monitor network traffic to expose a breach as soon as it occurred;

c.     Limit access to sensitive data to only those employees with a legitimate business need;

d.     Require the use of industry-tested security measures like multi-factor authentication; and

e.     Have an adequate response plan ready to execute in the event of a breach.

63.     The FTC has brought dozens of enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating such failures as an unfair act or practice prohibited by Section 5 of the FTC Act.

64.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and the Class's Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

**3.     Defendant Failed to Comply with Industry Standards**

65.     Defendant's conduct also fell well below accepted industry standards for data security. As a large, national provider of services to the healthcare industry, Defendant knew or should have known it was a prime target for cybercriminals and that its data security practices needed to be robust.

66.     Several best practices are standard in the industry to protect against the exact type of attack that occurred here. Upon information and belief, Defendant failed to implement many of

these basic safeguards, including: educating and training employees on cybersecurity threats; requiring strong passwords and multi-factor authentication; implementing multi-layer security with firewalls, anti-virus, and anti-malware software; encrypting sensitive data both at rest and in transit; backing up data securely; and limiting employee access to sensitive data.

67.    Upon information and belief, Defendant failed to meet the minimum standards of recognized cybersecurity frameworks, which are established standards for reasonable cybersecurity readiness, including:

    a.    **The NIST Cybersecurity Framework Version 2.0**[4], including by failing to meet the minimum standards of controls such as PR.AA-01 (Account Management), PR.AT-01 (Security Awareness Training), PR.DS-01 (Data-at-Rest Protection), DE.CM-01 (Network Monitoring), and RS.CO-04 (Incident Communication); and

    b.    **The Center for Internet Security's Critical Security Controls**[5] **(CIS CSC)**, a prioritized set of actions that form a defense-in-depth set of best practices that mitigate the most common attacks against systems and networks.

68.    These frameworks and practices are the accepted industry standard of care. Defendant's failure to comply with these standards was unreasonable and a direct and proximate cause of the Data Breach and the resulting harm to Plaintiff and the Class.

## IX.    Plaintiff and the Class have been harmed by Defendant's conduct

69.    As a direct and proximate result of Defendant's failure to protect their Private Information, Plaintiff and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft. Plaintiff and Class Members must now and in the future take time and effort, and spend money, to mitigate the actual and potential impact of the Data Breach on their lives.

70.    The injuries suffered by Plaintiff and the Class, or likely to be suffered as a direct

---

[4] https://www.nist.gov/cyberframework (last accessed July 15, 2026).

[5] https://www.cisecurity.org/controls (last accessed July 15, 2026).

13

result of Defendant's Data Breach, are not speculative. They include: (a) theft and improper disclosure of their valuable Private Information; (b) the imminent and certainly impending injury flowing from actual and potential fraud and identity theft; (c) damages to and diminution in value of their Private Information; (d) loss of the benefit of the bargain they made with Defendant; (e) ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach; (f) loss of privacy; (g) emotional distress, stress, anxiety, and annoyance; and (h) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further breaches.

**1.     The Stolen Private Information is a Valuable Commodity that Places Victims at Risk**

71.     The Private Information compromised in the Data Breach is a valuable commodity on both legitimate and illegitimate markets.

72.     American companies are estimated to have spent over $19 billion acquiring consumer data in 2018, demonstrating its significant legitimate value. The data stolen from Defendant is particularly prized on the dark web.

73.     PHI is referred to as a treasure trove for criminals. The value of this data is why cybercriminals engage in financially motivated attacks.

74.     They monetize the information by selling it on the dark web to other criminals who use it to commit a variety of identity-theft related crimes.

**2.     The Consequences of the Data Breach are Grave and Long-Lasting**

75.     The ramifications of Defendant's failure to secure Private Information are severe and enduring. Once data is stolen and released onto the dark web, it can never be fully recovered, and fraudulent use of that information may continue for years. As the U.S. Government Accountability Office has noted, stolen data may be held for up to a year or more before being

used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years.

76.     With the stolen data, criminals can:  Open new financial accounts, credit cards, or loans in victims' names; File fraudulent tax returns to steal tax refunds; Use victims' names and Social Security numbers to obtain government benefits; Obtain medical services or prescription drugs, creating false entries in victims' medical records that could affect their future care; Provide victims' personal information to police during an arrest, resulting in the issuance of arrest warrants in victims' names; Commit "social engineering" or phishing attacks, using the stolen data to gain victims' trust and manipulate them into disclosing additional information.

77.     The theft of a Social Security number is particularly pernicious. Unlike a credit card, an SSN cannot be easily changed. An individual cannot obtain a new SSN without significant paperwork and evidence of actual, ongoing harm. Even then, credit bureaus can quickly link the new number to the old one, meaning the negative information on the old number migrates to the new number.

### 3.     Plaintiff and the Class Have Lost Time and Incurred Costs to Mitigate the Harm

78.     As a direct result of the Data Breach, a reasonable person is expected to take steps to address the dangerous situation and mitigate the risk of identity theft.

79.     Failure to do so could expose the individual to even greater financial harm.

80.     Plaintiff and Class Members have spent, and will continue to spend, valuable and irreplaceable time on mitigation activities, including: researching the Data Breach; closely monitoring their financial, credit, and medical account statements; placing and managing fraud alerts and credit freezes; disputing fraudulent charges; and securing their accounts.

81.     These harms are not speculative. As detailed below, Plaintiff Bieber has already

experienced fraudulent charges and has been forced to spend personal time dealing with the fallout of Defendant's security failures.

### 4.   Diminution in Value of Private Information

82.   Private Information is a valuable property asset. An active and robust legitimate marketplace for this data exists, with the data brokering industry being worth roughly $200 billion.

83.   As a result of the Data Breach, Plaintiff's and the Class's Private Information, which has an inherent market value, has been damaged and diminished by its compromise and widespread release to unauthorized criminals. This transfer of value occurred without any consideration paid to Plaintiff or the Class for their property, resulting in a direct economic loss. The rarity and confidentiality of their data has been destroyed.

### 5.   Loss of the Benefit of the Bargain

84.   Plaintiff and Class Members entered into relationships with Defendant with the reasonable understanding and expectation that Defendant would use a portion of the value exchanged to provide adequate data security. This expected security was a part of the benefit of the bargain.

85.   Defendant failed to provide the expected data security. Accordingly, Plaintiff and the Class received services of a lesser value than what they reasonably expected to receive. They did not get what they bargained for, and have been damaged by overpaying for services and/or being undercompensated for labor that came without the promised data protection.

### 6.   The Future Cost of Lifetime Credit and Identity Theft Monitoring is Reasonable and Necessary

86.   Given the permanent nature of the compromised Private Information, Plaintiff and the Class face a lifelong risk of identity theft and fraud.

87.   The reasonable and necessary cost to monitor and protect Class Members from the

risks arising from Defendant's Data Breach must extend for their lifetimes.

88.    The retail cost of comprehensive credit and identity theft monitoring can be approximately $200 per year per person.[6] This is a reasonable and necessary future cost that Plaintiff and Class Members must now bear for years, if not decades, solely due to Defendant's failure to safeguard their Private Information.

### 7.    Plaintiff's Experience Demonstrates the Concrete Harm

89.    As a direct and traceable result of the Data Breach, Plaintiff has suffered actual injury. After the Data Breach, Plaintiff experienced suspicious activity on Cash App card, which she usually keeps inactive. She received notifications of several small purchases on Amazon Prime, despite not making those purchases. Plaintiff was forced to confirm that these purchases were not hers, cancel her Cash App card, and request and receive a new card.

90.    The Data Breach has forced Plaintiff to spend significant personal time monitoring her financial accounts, disputing fraudulent charges, and attempting to secure her identity.

91.    This is valuable time she would otherwise have spent with her family, and this time has been lost forever

92.    Plaintiff has also suffered actual injury from the exposure and theft of her Private Information, which violates her right to privacy and has caused her significant anxiety, fear, and stress about her financial security.

93.    She faces an imminent and impending injury arising from the substantially increased risk of future fraud, misuse, and identity theft.

94.    Plaintiff has a continuing interest in ensuring that her Private Information, which

---

[6] https://money.usnews.com/credit-cards/articles/should-you-use-a-credit-monitoring-service#:~:text=You%20can%20look%20out%20for,to%20pay%20for%20credit%20monitoring (last accessed July 15, 2026).

remains in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ALLEGATIONS

95.     Plaintiff brings this class action individually and on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff seeks certification of the claims and issues in this action on a class-wide basis under Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4).

96.     The Class that Plaintiff seeks to represent is defined as follows:

### Nationwide Class

> All individuals residing in the United States whose Private Information was compromised as a result of the Data Breach publicly announced by AdaptHealth Corp. on or about July 2, 2026

97.     Excluded from the Class are: (a) Defendant and its parents, subsidiaries, affiliates, officers, directors, and any entity in which Defendant has a controlling interest; (b) all individuals who make a timely election to be excluded from this proceeding; (c) the Judge to whom this case is assigned and any member of the Judge's staff and immediate family; and (d) the legal representatives, successors, or assigns of any such excluded person or entity.

98.     Plaintiff reserves the right to amend the Class definition or to propose subclasses in subsequent pleadings and motions for class certification as may be appropriate based on facts learned through discovery.

99.     This action satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of Federal Rule of Civil Procedure 23.

100.    **Numerosity (Fed. R. Civ. P. 23(a)(1))**: The members of the Class are so numerous that their individual joinder is impracticable. On information and belief, the Data Breach affected, at minimum, hundreds of individuals in light of the nature of the incident and the potential volume

of data placed at risk. The identities and addresses of Class Members are ascertainable from Defendant's records.

101.    **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3))**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect only individual members. These common questions include, but are not limited to:

a.  Whether Defendant owed a duty to Plaintiff and the Class to implement and maintain reasonable security procedures and practices to protect their Private Information;

b.  Whether Defendant failed to adequately safeguard Plaintiff's and the Class's Private Information;

c.  Whether Defendant's data security systems and practices violated the FTC Act, HIPAA, and/or other applicable laws, regulations, and industry standards;

d.  Whether Defendant knew or should have known that its computer systems and data security practices were vulnerable to a cyberattack;

e.  Whether the Data Breach was the foreseeable and proximate result of Defendant's wrongful conduct;

f.  When Defendant actually learned of the Data Breach and whether its response was adequate;

g.  Whether Defendant failed to provide timely, adequate, and accurate notice of the Data Breach to Plaintiff and the Class without unreasonable delay, and whether this failure caused damages;

h.  Whether Defendant's must offer credit monitoring or other services to compensate Class Members for their lifelong risk of identity theft;

i.  Whether Defendant was unjustly enriched by collecting and storing the Private Information of Plaintiff and the Class while failing to provide adequate security;

j.  Whether Defendant's actions constitute negligence and/or negligence per se;

k.  Whether Plaintiff and the Class suffered injury and ascertainable losses as a direct and proximate result of Defendant's actions and failures to act;

19

l.    Whether Plaintiff and the Class are entitled to recover damages, including actual, compensatory, statutory, and punitive damages; and

m.    Whether Plaintiff and the Class are entitled to declaratory and injunctive relief, and if so, what relief is necessary to redress the imminent and ongoing harm they face.

102.    **Typicality (Fed. R. Civ. P. 23(a)(3))**: Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all Class Members, entrusted her Private Information to Defendant. Defendant subjected all Class Members to the same wrongful conduct by failing to secure its systems, resulting in the same Data Breach that compromised all Class Members' data. Plaintiff and all Class Members were injured by the same wrongful acts and omissions and face the same ongoing risks of identity theft and fraud. The relief Plaintiff seeks is typical of the relief sought for the Class.

103.    **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4))**: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with, and not antagonistic to, the interests of the Class Members he seeks to represent. Plaintiff has retained counsel who are competent and highly experienced in litigating data breach and complex class action lawsuits. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class.

104.    **Superiority (Fed. R. Civ. P. 23(b)(3))**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of this complex litigation against a large corporation. It would be prohibitively expensive and impracticable for individual Class Members to seek redress for Defendant's wrongdoing. Absent a class action, Defendant will likely retain the benefits of its misconduct and escape liability, and Class Members will have no effective remedy. Individualized

litigation would also create a risk of inconsistent or contradictory judgments and would be an inefficient use of the parties' and the judiciary's resources. The class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

105.    **Injunctive and Declaratory Relief (Fed. R. Civ. P. 23(b)(2))**: This class action is also appropriate for certification under Rule 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Class, making final injunctive and declaratory relief appropriate with respect to the Class as a whole. Defendant's systemic failure to protect Private Information and its failure to provide adequate protection for the future affect all Class Members uniformly. Unless a class-wide injunction is issued, Defendant may continue its failure to properly secure the Private Information of Class Members, subjecting them to an ongoing risk of future harm.

106.    **Manageability**: This case is manageable as a class action. The identities of Class Members are ascertainable through Defendant's records. The common issues of law and fact predominate, and the presentation of evidence on these issues can be accomplished efficiently on a class-wide basis.

107.    Alternatively, and without limiting the foregoing, Plaintiff seeks certification of particular issues under Fed. R. Civ. P. 23(c)(4), as the resolution of these common issues would materially advance the litigation for all Class Members. These issues include, but are not limited to:

    a.    Whether Defendant owed a legal duty to Plaintiff and the Class to exercise reasonable care in collecting, storing, and safeguarding their Private Information;

    b.    Whether Defendant breached that legal duty by failing to implement and maintain reasonable security measures;

c.    Whether Defendant failed to comply with applicable laws, regulations, and industry standards, including the FTC Act and HIPAA, relating to data security;

d.    Whether Defendant's failure to provide timely and adequate notice of the Data Breach constitutes negligence and violates its common law duties; and

e.    Whether Plaintiff and the Class are entitled to injunctive relief, and if so, the appropriate scope of such relief.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On behalf of Plaintiff and the Class)

108.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

109.    Defendant solicited, gathered, and stored the Private Information of Plaintiff and the Class as part of providing its healthcare services.

110.    Upon accepting and storing the Private Information of Plaintiff and Class Members, Defendant undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care to secure and safeguard that information, to use secure methods to do so, and to destroy the information once it was no longer needed.

111.    This duty of care arose from the special relationship between Defendant and Plaintiff and the Class Members. Plaintiff and the Class entrusted Defendant with their highly sensitive Private Information with the reasonable expectation and mutual understanding that Defendant would protect it. Defendant was in a superior position of knowledge and control with respect to the security of its data systems, and Plaintiff and the Class Members had no ability to protect the information that was in Defendant's possession.

112.    Defendant's duty of care also arose from the foreseeability of harm. Defendant knew or should have known that its business of providing healthcare related services made it a

22

prime target for cyberattacks. The risk of a data breach and the subsequent harm to individuals whose data was stolen was a foreseeable and probable consequence of Defendant's failure to maintain adequate security.

113.   Defendant's duty of care is further  defined by federal law, including Section 5 of the FTC Act and HIPAA, and by established industry standards, including the NIST Cybersecurity Framework and the CIS Critical Security Controls.

114.   Defendant had additional duties to: (a) implement processes to quickly detect a data breach; (b) act upon security warnings in a timely fashion; and (c) provide timely, accurate, and adequate notice of any data breach to Plaintiff and the Class Members to allow them to take appropriate steps to mitigate their harm.

115.   Defendant breached its duties to Plaintiff and the Class and was negligent in failing to use reasonable care to protect their Private Information. Upon information and belief, Defendant's specific negligent acts and omissions include, but are not limited to:

a.      Failing to adopt, implement, and maintain reasonable and adequate data security measures to safeguard Plaintiff's and Class Members' Private Information;

b.      Failing to encrypt sensitive Private Information, rendering it readable and usable by unauthorized actors upon exfiltration;

c.      Failing to implement industry-standard security measures such as multi-factor authentication, adequate firewalls, and network intrusion detection systems;

d.      Failing to adequately monitor its own networks and systems for security intrusions and vulnerabilities;

e.      Failing to detect the unauthorized access to its systems in a timely manner;

f.      Failing to properly train its employees on cybersecurity best practices and threats;

g.      Failing to delete the Private Information for individuals it no longer had a business need to retain the data; and

h.      Failing to provide prompt, adequate, and accurate notice of the Data Breach to

Plaintiff and the Class.

116. But for Defendant's negligent conduct and breach of its duties, the Data Breach would not have occurred, and the Private Information of Plaintiff and the Class would not have been stolen and released to criminals.

117. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered, and will continue to suffer, actual injuries and damages, including: the fraudulent use of their financial accounts; theft and diminution in value of their Private Information; the loss of privacy; out-of-pocket expenses and the value of their time spent on mitigation efforts; the loss of the benefit of their bargain with Defendant; and the ongoing and imminent threat of future identity theft, financial fraud, and medical fraud, as well as the accompanying anxiety, stress, and emotional distress.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On behalf of Plaintiff and the Class)**

118. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

119. As alleged herein, Defendant violated its duties under federal statutes, including Section 5 of the FTC Act, 15 U.S.C. § 45, and HIPAA, 45 C.F.R. §§ 164.306, 164.308, 164.312, and the HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414.

120. Section 5 of the FTC Act prohibits "unfair or deceptive act or practices in or affecting commerce," which, as interpreted and enforced by the FTC, includes the failure of a business to implement reasonable and appropriate data security measures to protect consumers' sensitive information. Defendant's failure to safeguard Private Information constitutes an unfair practice under the FTC Act.

121. HIPAA's Security and Breach Notification Rules required Defendant, as a business associate, to implement specific technical, administrative, and physical safeguards to protect ePHI and to provide notice of any breach of unsecured PHI without unreasonable delay and in no case later than 60 days following discovery. Defendant's failure to prevent the breach and its failure to timely provide notice violated these provisions.

122. These statutes were enacted to protect the safety and privacy of individuals like Plaintiff and the Class Members and to prevent the exact type of harm that occurred here—the theft and unauthorized disclosure of sensitive Private Information and the resulting risk of identity theft and fraud.

123. Defendant's violations of the FTC Act and HIPAA constitute negligence per se.

124. The injuries and damages suffered by Plaintiff and the Class were the direct and proximate result of Defendant's violation of these statutes. But for Defendant's failure to comply with its statutory duties, Plaintiff and the Class would not have been harmed.

125. As a direct and proximate result of Defendant's negligence per se, Plaintiff and the Class have suffered damages as described herein and are entitled to damages in an amount to be proven at trial.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiff and the Class)**

126. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

127. When Plaintiff and Class Members provided their Private Information to Defendant in connection with the receiving Defendant's services, they entered into implied contracts with Defendant.

128. A material term of these implied contracts was Defendant's promise to safeguard the Private Information of Plaintiff and the Class and to provide timely and accurate notice in the event of a data breach. In exchange for the benefits of Plaintiff's and the Class's labor, service payments, and the data itself, Defendant implicitly agreed to provide adequate data security. This was a critical part of the benefit of the bargain for which Plaintiff and the Class provided consideration.

129. Plaintiff and Class Members reasonably believed and expected that Defendant would use a portion of the value it received to fund adequate data security measures consistent with its promises, industry standards, and legal requirements.

130. Plaintiff and Class Members fully performed their obligations under these implied contracts, including by providing their Private Information to Defendant.

131. Defendant materially breached its implied contracts with Plaintiff and the Class by failing to implement and maintain reasonable security measures to protect their Private Information and by failing to provide timely and adequate notice of the Data Breach.

132. As a direct and proximate result of Defendant's breach of its implied contracts, Plaintiff and the Class have been damaged. They did not receive the full benefit of their bargain, as the services they received were of a diminished value due to the lack of adequate data security. They have also suffered consequential damages, including out-of-pocket costs and the value of their time spent mitigating the harms of the breach, and face the ongoing risk of identity theft and fraud.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY**
**(On behalf of Plaintiff and the Class)**

133. Plaintiff incorporates by reference and re-alleges each and every allegation set forth

26

above as though fully set forth herein.

134.    A special relationship of trust and confidence existed between Defendant and Plaintiff and the Class. By collecting and holding their most sensitive Private Information, Defendant became a fiduciary with respect to that data, undertaking a duty to act primarily for the benefit of Plaintiff and the Class in safeguarding that information.

135.    Plaintiff and the Class were in a position of vulnerability and were exclusively dependent on Defendant to implement and maintain adequate data security practices. They reposed their trust and confidence in Defendant to protect their Private Information from unauthorized disclosure and had no control over the manner in which Defendant secured its systems.

136.    Defendant accepted this fiduciary duty by soliciting, collecting, and storing this sensitive information.

137.    Defendant breached its fiduciary duty to Plaintiff and the Class by, among other things: failing to implement and maintain sufficient safeguards to protect their Private Information; failing to diligently discover and investigate the Data Breach; and failing to provide prompt, accurate, and adequate notice of the Data Breach.

138.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and the Class have suffered and will continue to suffer damages, including the compromise and theft of their Private Information, loss of privacy, out-of-pocket expenses to mitigate the risk of identity theft, and the substantial and ongoing risk of future harm.

### COUNT V
### UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Class, Pleaded in the Alternative)

139.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein. This claim is pleaded in the alternative to Plaintiff's breach

27

of contract claim.

140.    Plaintiff and Class Members conferred a benefit upon Defendant. This benefit included the provision of their valuable Private Information, which Defendant used for its business operations and commercial gain. The benefit also included the portion of payments for services that was intended to fund reasonable data security.

141.    Defendant appreciated, accepted, and retained this benefit. Defendant understood it was being entrusted with valuable data and that its revenues were predicated on the provision of services that included, at least implicitly, data protection.

142.    Defendant enriched itself by saving the costs it reasonably should have expended on adequate data security measures. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant, upon information and belief, increased its own profits at the expense of Plaintiff and the Class by utilizing cheaper, ineffective security measures.

143.    Under principles of equity and good conscience, it would be unjust and inequitable for Defendant to be permitted to retain the benefits it received from Plaintiff and the Class, including the money it saved by forgoing adequate data security, without fully compensating them for the harms caused by its conduct.

144.    Plaintiff and the Class are entitled to restitution from Defendant, and an order of disgorgement of all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiff and the Class may seek restitution.

**COUNT VI**
**DECLARATORY JUDGMENT**
**(On behalf of Plaintiff and the Class)**

145.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth

above as though fully set forth herein.

146.    Plaintiff brings this count pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

147.    An actual, present, and justiciable controversy exists between Plaintiff and the Class on the one hand, and Defendant on the other. Plaintiff and the Class contend, and Defendant disputes, that Defendant's data security measures remain inadequate to protect their Private Information, which Defendant continues to possess, and that this inadequacy violates Defendant's legal duties and places them at a continuing and imminent risk of future harm.

148.    Plaintiff and the Class have a continuing interest in ensuring that their Private Information is protected from additional breaches. Defendant has yet to notify affected individuals of the Data Breach or specify what concrete steps Defendant has taken to remedy the situation.

149.    Plaintiff, for herself and the Class, therefore seeks a declaration that:

a.    Defendant's existing data security measures do not comply with its common law and statutory duties of care to provide reasonable and appropriate security to protect the Private Information in its possession; and

b.    To comply with its duties of care, Defendant must implement and maintain comprehensive and reasonable security measures, including, but not limited to, encrypting all sensitive data, undergoing regular third-party security audits, and providing adequate cybersecurity training to its employees.

150.    A declaratory judgment is necessary to define the rights and obligations of the parties and will serve to prevent future harm by compelling Defendant to reform its data security practices. Plaintiff and the Class have no adequate remedy at law to address this ongoing threat.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dorothy Bieber, individually and on behalf of the Class, respectfully prays for judgment against Defendant and requests that the Court enter an Order granting the following relief:

A. An Order certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as Class Representative for the Class, and appointing Plaintiff's counsel as Class Counsel;

B. A judgment in favor of Plaintiff and the Class on all counts asserted herein and a declaration that Defendant's conduct violates the laws referenced in this Complaint;

C. An award of damages to Plaintiff and the Class, including actual, compensatory, consequential, nominal, statutory, and punitive damages, in an amount to be determined at trial;

D. An award of equitable relief, including restitution to and disgorgement of all profits, benefits, and other compensation unjustly obtained by Defendant as a result of its wrongful conduct;

E. An Order providing for injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including, but not limited to, prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    i. Requiring Defendant to notify the class of the Data Breach;

    ii. Requiring Defendant to protect, including through encryption, all Private Information it collects and stores in accordance with all applicable regulations and industry standards;

    iii. Requiring Defendant to implement and maintain a comprehensive data security program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and the Class;

    iv. Requiring Defendant to purge, delete, and destroy in a secure manner the Private Information of Plaintiff and Class Members that is not necessary for its provision of services or other legitimate business purposes;

    v. Requiring Defendant to engage independent, third-party security auditors/penetration testers to conduct testing, including simulated attacks and audits, on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such auditors;

    vi. Requiring Defendant to implement and maintain security measures such as adequate firewalls, multi-factor authentication, network segmentation, and sufficient logging and monitoring of its networks to protect against and detect intrusions;

    vii. Requiring Defendant to conduct routine and continual internal training and

30

education to inform its employees and personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

viii.  Ordering Defendant to purchase and provide lifetime credit monitoring and identity theft insurance and protection services to Plaintiff and the Class; and

ix.  Requiring Defendant to meaningfully educate all Class Members about the threats they face as a result of the compromise of their Private Information and the steps they must take to protect themselves;

F.  An Order requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

G.  An award of reasonable attorneys' fees, litigation costs, and other expenses, as allowable by law;

H.  An award of pre-judgment and post-judgment interest on all amounts awarded; and

I.  Such other and further relief as this Court may deem just and proper.


## JURY TRIAL DEMANDED

Plaintiff, individually and on behalf of the Class, demands a trial by jury on all claims so triable.


Dated: July 17, 2026                    Respectfully submitted,

                                        /s/ Zachary Arbitman
                                        Zachary Arbitman (PA Bar No. 314274)
                                        George Donnelly (PA Bar No. 321317)
                                        **FELDMAN SHEPHERD WOHLGELERNTER
                                        TANNER WEINSTOCK & DODIG, LLP**
                                        1845 Walnut Street, 21st Floor
                                        Philadelphia, PA 19103
                                        Telephone: (215) 567-8300
                                        Facsimile: (215) 567-8333
                                        zarbitman@feldmanshepherd.com
                                        gdonnelly@feldmanshepherd.com

                                        *Attorneys for Plaintiff and the Class*

31